998 F.2d 1012
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Frances C. WOOTEN, Plaintiff-Appellant,
v.
Donna E. SHALALA, Secretary of Health and Human Services,
Defendant-Appellee.
 No. 92-1636.
 United States Court of Appeals,
Fourth Circuit.
 Argued: June 7, 1993.
Decided: July 16, 1993.
 
 Appeal from the United States District Court for the District of South Carolina, at Columbia. Charles W. Gambrell, Magistrate Judge. (CA-91-1415-3-OAH)
 D. Michael Kelly, Suggs & Kelly, Columbia, South Carolina, for Appellant.
 Ronald Lamar Paxton, Assistant Regional Counsel, Department of Healtg and Human Services, Atlanta, Georgia, for Appellee.
 Stuart E. Gerson, Assistant Attorney General, John S. Simmons, United States Attorney, Bruce R. Granger, Chief Counsel, Region IV, Mack A. Davis, Deputy Chief Counsel for Social Security Litigation and Programs, Mary Ann Sloan, Principal Regional Counsel, Social Security Disability Litigation, Haila Naomi Kleinman, Supervisory Assistant Regional Counsel, Department of Health and Human Services, Atlanta, Georgia, for Appellee.
 D.S.C.
 AFFIRMED.
 Before MURNAGHAN, HAMILTON, and LUTTIG, Circuit Judges.
 PER CURIAM:
 
 OPINION
 
 1
 Frances Wooten sought supplemental security income and disability insurance benefits under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383c, alleging disability due to narcolepsy and chronic depression. The Administrative Law Judge, after conducting a hearing on Wooten's claims, concluded that Wooten was disabled within the meaning of the Act since August 11, 1988; consequently, he determined that she was eligible for supplemental security income beginning on that date. However, he did not find that Wooten was disabled at any time on or before December 31, 1987, the date she last met the earnings requirement for disability insurance benefits, and therefore concluded that she did not qualify for benefits under Title XVI. The Secretary of Health and Human Services adopted the ALJ's decision, and Wooten appealed to the district court for the District of South Carolina. The district court concluded that substantial evidence supported the Secretary's findings and further that her decision was proper in light of the relevant law. Wooten has appealed the district court's affirmance of the Secretary's decision.
 
 
 2
 Wooten, a fifty-eight year old female, graduated from high school in 1958 and completed secretarial training at a vocational school in 1970. Thereafter, she worked as a secretary to the sales manager of Stone Manufacturing Company from October 1976 to May 1980.
 
 
 3
 From February 1981 to February 17, 1982, she was employed fulltime as a record keeper for a furniture store. She has not been employed full-time since February 1982, although she occasionally worked temporary jobs through a placement agency from 1983 through 1985.
 
 
 4
 At her hearing before the ALJ, Wooten testified that she became unable to work on February 17, 1982, because her health was poor and she felt chronically nervous and depressed. She was seen for a general physical examination by Dr. William S. Bradham, a specialist in internal medicine, on July 1, 1982. At that time, she reported recurrent nausea and vomiting, pain in her left side, irritability, lack of confidence and energy, anxiety, and other subjective symptoms. All physical findings were within normal limits.
 
 
 5
 Dr. Bradham concluded that Wooten suffered from chronic depression, and prescribed mild dosages of Ascendin and Ritalin (antidepressants). He testified that he had no knowledge of ever diagnosing Wooten as narcoleptic and that he did not refer her to a psychiatrist. Although he did not examine her between July 1, 1982 and August 1988, Dr. Bradham continued to prescribe mild dosages of anti-depressant medication for Wooten.
 
 
 6
 On August 11, 1988, Wooten underwent a consultative psychological examination by Dr. Mark Sloan, who noted severe anxiety, agitated behavior, and weeping demeanor. At that time, Dr. Sloan concluded that Wooten suffered from severe anxiety and depression with resultant impairment of judgment and inability to deal with work stresses, function independently, relate predictably in social situations, or behave in an emotionally stable manner.
 
 
 7
 Dr. Sloan's findings were supported by those of Dr. J.H. DeWitt, a psychiatrist who performed a post-hearing consultative examination on July 7, 1989. According to Dr. DeWitt, Wooten had a normal IQ but demonstrated depressed mood and generalized anxiety with a panic disorder, which, in his opinion, had resulted in poor or no ability to maintain attention and concentration, deal with work stresses, interact with supervisors or the general public, function independently, or demonstrate reliability.
 
 
 8
 Wooten filed applications with the Department of Health and Human Services, Social Security Administration (SSA) for supplemental security income and disability insurance benefits on June 17, 1988, and July 12, 1988, respectively, alleging disability commencing on February 17, 1982, due to narcolepsy and chronic depression. In support of her applications, she relied on: (1) Dr Bradham's diagnosis in 1982, (2) a one-line letter dated June 15, 1988, from Dr. Bradham, who had not seen her since July 12, 1982, stating that "Wooten is totally and permanently disabled because of a chronic depressive reaction," (3) the fact that she was taking anti-depressants, and (4) her own account of her illness.
 
 
 9
 The SSA denied Wooten's applications initially and again upon reconsideration on the grounds that Wooten could perform "other work." Wooten duly filed a request for hearing on March 9, 1989. The hearing was held before an Administrative Law Judge in Columbia, South Carolina, on May 25, 1989, at which time Wooten was represented by counsel. At issue at her hearing was whether she was disabled within the meaning of the Act, and if so, when her disability commenced and how long it continued.
 
 
 10
 After the hearing, the ALJ determined that Wooten was not entitled to a period of disability or disability insurance benefits because she was not disabled as defined by the Act on or before December 31, 1987, the date Wooten last met the insured status requirements for entitlement. See 42 U.S.C. § 423(c)(1); 20 C.F.R. § 404.131 (requiring insured status in order to receive a period of disability or disability insurance benefits).
 
 
 11
 As for Wooten's supplemental security income claim, the ALJ found that, as of August 11, 1988, Wooten had severe depressive neurosis, generalized anxiety, and panic disorder which were of the level of severity necessary to meet the requirements ofs 12.04 and § 12.06 of the governing regulations. 20 C.F.R. Part 404, Subpart P, App. 1. Therefore, he determined that, as of August 11, 1988, Wooten was disabled for the purpose of eligibility for supplemental security income.
 
 
 12
 The ALJ reached his decision after making several findings of fact. He found, based on the medical evidence and her appearance at the hearing, that Wooten suffered from severe mental impairments since August 11, 1988. However, he ruled that, prior to August 11, 1988, Wooten's only impairment was a history of mild depression in 1982 which was controlled by anti-depressant medications and which did not require mental health counseling or other psychiatric treatment. In addition, he found that Wooten's allegations that she suffered from disabling pain, depression, and other subjective symptoms prior to August 11, 1988, were not supported by the overall evidence in the record, including her description of daily activities prior to that date and the absence of any emergency room treatment, hospitalization, or even visits to a physician, psychiatrist, or other medical professional in the entire period between July 1, 1982, and August 11, 1988.
 
 
 13
 In light of all the evidence in the record, the ALJ concluded that Wooten did not suffer from a "severe" impairment (i.e., an impairment which significantly limited her ability to perform basic workrelated functions, 20 C.F.R. § 404.1521) prior to August 11, 1988. The Appeals Council denied Wooten's request for review of the ALJ's decision, finding that the evidence did not show mental illness on or before December 31, 1987. The Secretary thereafter adopted the ALJ's decision.
 
 
 14
 Wooten next brought suit in the United States District Court for the District of South Carolina, Columbia Division, challenging the Secretary's decision. With the consent of both parties, the case was referred to a magistrate judge. The magistrate judge found that the Secretary's decision was supported by substantial evidence and, in fact, that there was no evidence of record about Wooten's condition prior to December 31, 1987, other than Dr. Bradham's report of July 1, 1982 and Wooten's self-account.
 
 
 15
 In affirming the Secretary's holding, the magistrate judge rejected Wooten's characterization of Dr. Bradham as her"treating physician," because Dr. Bradham did not continuously observe Wooten over a prolonged period of time. He also dismissed Wooten's contention that she should not be penalized for failing to seek medical treatment which she allegedly could not afford on the grounds that Wooten had access to various mental health clinics and hospitals funded by the state and that her financial status was not relevant to the determination of the onset date of her condition.
 
 
 16
 We find that the lower court correctly concluded that substantial evidence supported the Secretary's finding that Wooten did not prove that she suffered, on or prior to December 31, 1987, a "severe disability" as defined by the Social Security Act and thus she was not entitled to disability insurance benefits or a period of disability. Substantial evidence shall, of course, be conclusive on factual issues. Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966); accord Richardson v. Perales, 402 U.S. 389, 401 (1971); see also Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). However, a factual finding "is not binding if it was reached by means of an improper standard or misapplication of the law." Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Therefore, we must consider whether the Secretary applied the correct legal standards in reaching her factual findings in the instant case.
 
 
 17
 The Secretary concluded that it must be assumed that Wooten's depression responded to the mild dosages of anti-depressant medication prescribed by Dr. Bradham since Wooten sought no additional medical treatment. Relying on our decision in Lovejoy v. Heckler, 790 F.2d 1114 (4th Cir. 1986), Wooten argues that the Secretary improperly penalized her for failing to receive ongoing medical treatment which she could not afford.
 
 
 18
 In Lovejoy, we held that it was improper to consider a disability claimant's failure to seek treatment in determining whether her impairment was severe when the failure was justified by lack of funds. Lovejoy, 790 F.2d at 1116-1117. Lovejoy testified at her hearing that she had very little income and lacked the funds to seek medical help or medication for her ailments. Id. at 1117.
 
 
 19
 Lovejoy 's holding, however, does not support Wooten's position for several reasons. First, free mental health treatment was available to Wooten. Second, unlike Lovejoy, the question presented here is when the claimant's disability arose, not merely whether she suffers a disability at present. Finally, it is not clear from the record that Wooten could not afford medical treatment. In fact, she continued to purchase medication throughout the 1982-1988 period and failed to meet with Dr. Bradham after her initial visit despite his instruction that she return for a follow-up appointment. Such circumstances support the Secretary's conclusion that Wooten did not seek other medical treatment because the anti-depressants were controlling her depressive symptoms to the extent that they did not interfere with her ability to perform basic work activities.
 
 
 20
 Wooten also challenges the Secretary's decision on the grounds that Dr. Bradham was her treating physician and thus his opinion of disability should have been given great weight. Specifically, she believes that the Secretary should have deferred to Dr. Bradham's statement in a one-line letter dated June 15, 1988 and addressed to "To Whom It May Concern" stating that "Wooten is totally and permanently disabled because of a chronic depressive reaction."
 
 
 21
 In the Fourth Circuit, the opinion of a treating physician must be afforded great weight by the Secretary and "may be disregarded only if there is persuasive contradictory evidence." Coffman, 829 F.2d at 517 (applying the attending physician's rule). Although the Secretary is not bound by the opinion of a treating physician, she still must grant it sufficient deference as "it reflects an expert judgment based upon a continuing observation of the patient's condition over a prolonged period of time." Vitek v. Finch, 438 F.2d 1157, 1160 (4th Cir. 1971); see also Mitchell v. Schweiker, 699 F.2d 185, 187 (4th Cir. 1983).
 
 
 22
 Nevertheless, Dr. Bradham's opinion did not merit great weight because he was not Wooten's "treating physician" under the circumstances here. Although he did continue to prescribe antidepressant medication for Wooten, Dr. Bradham did not see her at all during the six-year period between July 1982 and August 1988. Thus, the magistrate judge properly concluded that Dr. Bradham's June 15, 1988 letter "cannot have been based on continuous observation of the plaintiff over a prolonged period of time;" and therefore, the letter should not have been accorded great weight under the attending physician doctrine.*
 
 
 23
 We therefore conclude that the Secretary's denial of Wooten's claim for disability insurance benefits based on the finding that Wooten failed to establish that she was disabled on or before December 31, 1987, the date she last met the insured status requirements, is supported by substantial evidence and by the law. Accordingly, the judgment is
 
 
 24
 AFFIRMED.
 
 
 
 *In addition, even if we accorded Dr. Bradham's letter great weight, it is unclear what result the letter supports. Couched in the present tense, the June 15, 1988 note did not mention pre-January 1, 1988 circumstances. Therefore, the letter does not appear to satisfy Wooten's burden of proof.